IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BRENDA KERSEY,

                              Plaintiff,

                  v.                              Civil Action Number 3:09cv726

PHH MORTGAGE CORPORATION,

                              Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court dispenses with oral argument because it would not assist in the decisional process. For the reasons set forth herein, the Court will deny the Defendant's motion.

## I. BACKGROUND

On May 3, 2002, the Plaintiff entered into a $71,397.00 mortgage loan to purchase a home located at 2911 Edgewood Avenue, Richmond, Virginia 23222. The loan, evidenced by a Note and secured by a Deed of Trust, was a Federal Housing Administration ("FHA") loan governed by FHA regulations of the federal Department of Housing and Urban Development ("HUD"). The Defendant is, and has been for some time, the holder of the Note.

Under the terms of the Deed of Trust that secured the loan, the holder of the Note can foreclose on the home in the event of arrearage on payment of the Note only if the holder has complied with FHA regulations. One such regulation incorporated into the terms of the Deed of

Trust is 24 C.F.R. § 203.604 that provides in relevant part as follows: "The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced . . . ." 24 C.F.R. § 203.604(b).

The Plaintiff fell into arrears on the Note. The Defendant appointed Professional Foreclosure Corporation of Virginia ("PFC") as substitute trustee on the Deed of Trust and instructed PFC to foreclose on the Plaintiff's home. PFC then scheduled a foreclosure sale without the Defendant or any other creditor entity ever having a face-to-face meeting with the Plaintiff or attempting to arrange for such a meeting. Believing that the Defendant's failure to have, or attempt to have, a face-to-face meeting violated the conditions set forth in 24 C.F.R. § 203.604(b) as incorporated into the Deed of Trust, the Plaintiff filed her Complaint on October 14, 2009 in Richmond City Circuit Court seeking a declaratory judgment that the Defendant has not complied with the terms of the Deed of Trust sufficient to allow the Defendant to go forward with a foreclosure of the home. The Defendant properly removed the matter to this Court on November 18, 2009. On November 25, 2009, the Defendant moved to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The Plaintiff has responded, the Defendant has replied, and this matter is ripe for the Court's decision.

## II. NATURE OF THE PLAINTIFF'S CLAIM

Though the Plaintiff originally brought her claim based on state law in state court, it is well-settled that federal procedure law controls the course of proceedings from the point of removal. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 437 (1974) ("[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings."). Thus, the Court will analyze the Plaintiff's claim for declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 2201[1], as the Act "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937).

The Federal Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction," a district court "*may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C.A. § 2201(a) (West 2009) (emphasis added). Thus, the authority of federal courts to entertain declaratory judgments is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). A district court "cannot decline to entertain [a declaratory judgment] action as a matter of whim or personal disinclination,"and it should grant a declaratory judgment "only as a matter of judicial discretion, exercised in the public interest." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). A district court should consider whether the declaratory judgment action will both (1) "serve a useful purpose in clarifying and settling the legal relations in issue" and (2) "terminate and afford relief from the uncertainty,

---

[1]Even if the Court were to analyze the Plaintiff's claim under Virginia's Declaratory Judgment Act, Va. Code § 8.01-184, the analysis and end result would be the same, as the two Acts are similar in language and practical effect. *See* Va. Code Ann. § 8.01-184 (West 2009) ("In cases of actual controversy, circuit courts . . . shall have power to make binding adjudications of right.").

insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). The Federal Rules of Civil Procedure, specifically Rule 57, "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed. R. Civ. P. 57. The Advisory Committee's Notes accompanying the 1937 adoption of Rule 57 of the Federal Rules of Civil Procedure explain that "[t]he controversy must necessarily be of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts. The existence or non-existence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared." Fed. R. Civ. P. 57 advisory committee's note (internal quotation marks and citations omitted).

Here, there is a presently justiciable controversy as to whether the Defendant owed the Plaintiff the duty to have, or attempt to have, a face-to-face meeting with her prior to commencing foreclosure. This matter clearly presents a distinct and ripe controversy as to the relative rights and duties under the parties' relevant contract – the Deed of Trust – and the Court has the power to declare what "the rights and other legal relations" of the parties are. 22 U.S.C.A. § 2201(a) (West 2009). The fact that the Plaintiff may also arguably have a claim for breach of contract is irrelevant, as "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57. The Plaintiff's suit does not call for an advisory opinion, and a declaratory judgment is appropriate and in the public interest in this case, as it serves a useful purpose in clarifying and settling the legal relations in issue, and it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint[.]" *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 556 U.S. at ----, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

### IV. ANALYSIS

The Defendant has moved to dismiss the Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support of its motion, the Defendant advances two arguments. First, the Defendant argues that 24 C.F.R. § 203.604 and the National Housing Act ("NHA") do not permit a private right of action, and, therefore, that the Plaintiff cannot "veil" what is actually a forbidden federal claim for violation of federal regulations as a claim brought pursuant to state contract law. Second, the Defendant argues that 24 C.F.R. § 203.604(c)(2)

excepts the Defendant from having to conduct, or attempt to conduct, a face-to-face meeting with the Plaintiff prior to commencing foreclosure, and that the Defendant appropriately relied on HUD's own interpretation of 24 C.F.R. § 203.604(c)(2) that suggests that the Defendant is so excepted.

>    **A.**  **The absence of a private federal cause of action available under the NHA or HUD regulations does not preclude the Plaintiff from bringing a declaratory judgment action based on rights and obligations under a contract governed by state law where the parties' contract incorporates as conditions of the contract the conditions contained in 24 C.F.R. § 203.604.**

The Fourth Circuit has acknowledged that the NHA does not expressly or implicitly create a private cause of action. *See Perry v. Hous. Auth.*, 664 F.2d 1210, 1215-17 (4th Cir. 1981); *In re Miller*, No. 02-1050, 2005 WL 269728, at *3 (4th Cir. 2005). Indeed, the Plaintiff admits that she "does not have a private right of action under federal law by reason of CFR 203.604." Pl.'s Compl. ¶ 14. The Plaintiff asserts, however, that "her claim is based on state [contract] law." Pl.'s Resp. at 1. This argument, according to the Defendant, "is nothing more than an attempt to circumvent [P]laintiff's inability to bring a claim based on the HUD regulations, and does not present a valid claim." D.'s Mot. to Dismiss at 3. The Plaintiff does not cite any legal authority in support of her position that the absence of a federal private cause of action does not preclude her from bringing a declaratory judgment action based on contractual obligations. The Defendant cites non-binding cases in support of its position, and the Court is not persuaded by any of them.

>    **(1)    The Defendant's cited authorities are neither binding nor persuasive.**

In support of its position that the Plaintiff cannot bring a declaratory judgment action based on state contract law under the facts pled, the Defendant cites four cases: (1) *Castrillo v. Am. Home Mortgage Servicing, Inc.*, No. 09-4369, 2009 WL 3837876, at *7 (E.D. La. Nov. 16, 2009); (2) *Gaitan v. Mortgage Elec. Registration Sys.*, No. 5:09-CV-01009, 2009 WL 3244729, at *9-10 (C.D.

Cal. Oct. 5, 2009); (3) *Fouche' v. Shapiro & Massey LLP*, 575 F. Supp. 2d 776, 790 n.7 (S.D. Miss. 2008); and (4) *Mitchell v. Chase Home Fin. LLC*, No. 3:06-CV-2099-K, 2008 WL 623395, at *4 (N.D. Tex. March 4, 2008). None of these cases is binding authority on the Court. All are decisions from districts outside of the Fourth Circuit, and three are unpublished. *Castrillo*, *Gaitan*, and *Fouche'* have zero factual relevance and are not persuasive in the least. The only case out of the four that is marginally persuasive at first glance – *Mitchell* – is factually distinguishable and is actually proven unpersuasive by another case that the Defendant cites elsewhere for the proposition that the NHA does not create a private cause of action, *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336 (N.D. Tex. June 24, 2009). The Court will address each of the Defendant's cited authorities in turn.

In *Castrillo*, the plaintiff sought to amend his complaint to include, among other things, a claim for "Violation of the National Housing Act by failing to provide notice of availability of counseling and failing to mitigate losses." *Castrillo*, No. 09-4369, 2009 WL 3837876, at *2. There is no indication whatsoever that a contract existed between the parties obligating them to comply with conditions of relevant federal regulations. Further, there is no indication that the plaintiff brought any claim at all related to a contract between the parties, much less a declaratory judgment action seeking a declaration as to the rights and obligations created by such a contract. Instead, it appears that the plaintiff in *Castrillo* attempted to do precisely what the Plaintiff in the case at bar acknowledges she cannot do – bring a claim under federal law for violation of federal regulations.

In *Gaitan*, the plaintiff also sought to amend his complaint to include, among other things, a claim for "Violation of the National Housing Act." *Gaitan*, No. 5:09-CV-01009, 2009 WL 3244729, at *9. Again, there is no mention whatsoever that a contract existed between the parties

incorporating as conditions of the agreement the obligations contemplated by various federal regulations. It is simply incorrect to assert, as the Defendant does in the case at bar, that "[t]he plaintiff in *Gaitan* made the same argument as Plaintiff here . . . ." D.'s Reply at 2. Instead, as in *Castrillo*, it appears that the plaintiff in *Gaitan* attempted to do precisely what the Plaintiff in the case at bar acknowledges she cannot do – bring a claim under federal law for violation of federal regulations.

In *Fouche'*, the plaintiff had alleged claims against the defendants for "violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, and for misrepresentation, defamation, intentional and negligent infliction of emotional distress and breach of fiduciary duty." *Fouche'*, 575 F. Supp. 2d at 779. The defendant moved for summary judgment as to each of these claims, as well as "any claim sought to be asserted by plaintiff under the Homeowners Counseling Act, 12 U.S.C. § 1701x . . . ." *Id.* at 779 n.7. The court, addressing the issue in a footnote, explained that the plaintiff "offered no basis for opposing [the defendant's] motion on this claim," and, presumably, it granted summary judgment as to the claim. *Id.* Again, however, there is no mention that a contract existed between the parties incorporating as conditions of the agreement the obligations contemplated by relevant federal regulations. To the extent that the plaintiff even brought a claim for violation of the NHA, the holding in *Fouche'* is not persuasive and does not touch the situation presented in the case at bar, as the plaintiff's claim was summarily dismissed for having been brought *under the Act*, not as a declaratory judgment action related to state law contract matters.

Finally, in *Mitchell*, the plaintiffs brought claims for "violations of HUD regulations, breach of contract, deceptive trade practices, violations of the Texas Debt Collection Practices Act, unreasonable collection efforts, and under the Texas Declaratory Judgments Act, and for specific

performance." *Mitchell*, No. 3:06-CV-2099-K, 2008 WL 623395, at *3. The defendant moved for summary judgment on all of the plaintiffs' claims. The Court will address only the *Mitchell* court's analysis of the claims relevant to the case at bar – violations of HUD regulations and breach of contract, as well as its analysis of the Texas Declaratory Judgment Act.

In granting summary judgment in favor of the defendant as to the plaintiffs' claim for violations of HUD regulations, the court held that there was "no private right of action available to a mortgagor for a mortgagee's noncompliance [with the NHA and HUD regulations]." *Id.* This holding, of course, only reiterates what the Plaintiff in the case at bar already acknowledges. However, the *Mitchell* court went on to determine that, even if the plaintiffs could sustain a claim under the NHA for failure to comply with HUD regulations, the defendant would still be entitled to summary judgment on that claim because the defendant had not violated the conditions contained in the HUD regulations. The Court defers discussion of this portion of the holding until the Court's analysis of whether the Defendant actually complied with the conditions of 24 C.F.R. § 203.604.

As to the *Mitchell* plaintiffs' breach of contract claim, as with the case at bar, the only contracts between the parties known to the court in *Mitchell* were the note and the deed of trust. Also like the case at bar, the deed of trust in *Mitchell* incorporated as conditions of the deed of trust the conditions contained in the HUD regulations. The defendant argued, as does the Defendant in the case at bar, that the plaintiffs' breach of contract claim was "merely a restatement of Plaintiffs [sic] claims for violations of the HUD regulations incorporated into the Deed of Trust." *Id.* at *4. Agreeing that the claim was a restatement of the plaintiffs' claim for violations of the HUD regulations – a claim the court had already rejected in part because it did not believe the defendant had violated the HUD regulations – and noting that the "Plaintiffs admit[ted] that they were in

default on their loan . . . [and] failed to dispute Defendants' evidence of their delinquency," the court in *Mitchell* held that the breach of contract claim "must be summarily dismissed." *Id.*

Finally, as to the plaintiffs' "claim" under the Texas Declaratory Judgment Act, the court in *Mitchell* noted that the Act was "a procedural statute" that "does not form the basis for any cause of action brought by Plaintiffs." *Id.* at *6. Of course, the Plaintiff in the case at bar does not argue that either the Federal Declaratory Judgment Act or the Virginia Declaratory Judgment Act creates substantive rights that give rise to a claim upon which relief can be granted. Instead, the Plaintiff seeks a declaratory judgment as to rights and obligations created by a contract between the parties. The parties' contract gives rise to the Plaintiff's claim, and the Declaratory Judgment Act provides an avenue through which the Court can hear the Plaintiff's controversy related to the rights and obligations contemplated by the parties' contract. Accordingly, this portion of the *Mitchell* decision also fails to persuade the Court to dismiss the Plaintiff's suit.

Just over a year after *Mitchell*, in June 2009, the United States District Court for the Northern District of Texas issued a decision in *Baker* clarifying and distinguishing its holding in *Mitchell*.[2] The plaintiffs in *Baker* brought claims for, among other things, wrongful foreclosure and breach of contract. *Baker*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *2. The plaintiffs' wrongful foreclosure claim was based, in part, on the defendant's failure to comply with the HUD regulations that outlined the procedures for accelerating and foreclosing on a loan subject to the FHA. *Id.* at *3. Citing *Mitchell*, the court in *Baker* granted summary judgment in favor of the defendant as to this

---

[2]The Court notes for the sake of clarity that even though both *Mitchell* and *Baker* were decisions out of the Northern District of Texas, *Mitchell* was decided by the Honorable United States District Judge Ed Kinkeade, while *Baker* was decided by the Honorable United States District Judge Jane J. Boyle.

claim, acknowledging that the "plaintiffs cannot sustain a cause of action for wrongful acceleration and foreclosure solely on the basis that the FHA and HUD regulations were not complied with."[3] *Id.* (citing *Mitchell*, No. 3:06-CV-2099-K, 2008 WL 623395, at *3). This conclusion, again, is not disputed in the case at bar. Nevertheless, as the *Baker* court continued, "the inquiry does not end here." *Id.*

In their breach of contract claim, the plaintiffs in *Baker* argued that the defendant's "failure to comply with HUD regulations incorporated by reference in the Note and deed of trust prior to accelerating the [plaintiffs'] Note constitutes a breach of the parties' agreement." *Id.* at *5. The defendant, citing *Mitchell*, argued that "the [plaintiffs'] breach of contract claim . . . merely duplicate[d] the [plaintiffs'] unsuccessful wrongful foreclosure cause of action." *Id.* The *Baker* court rejected the defendant's argument, explaining that "the contract cause of action and the wrongful foreclosure claim are premised on separate theories of liability." *Id.* A wrongful foreclosure action, the court continued, "compensates aggrieved parties for the lost possession of their property," while an action for breach of contract claim "compensates for one's failure to comply with mutually agreed upon terms." *Id.* The court explained that, "[b]ecause the parties explicitly incorporated the HUD regulations into their agreement, the 'documents and regulations constitute an integrated contract.'" *Id.* (quoting *Hernandez v. Home Sav. Ass'n of Dallas*, 606 F.2d 596, 601 (5th Cir. 1979)). Therefore, the court reasoned that "failure to comply with the regulations

---

[3]In granting summary judgment for the defendant as to the wrongful foreclosure claim, the Court also noted that the plaintiffs had never lost possession of the subject property, meaning their claim was actually for *attempted* wrongful foreclosure, an action Texas does not recognize. *Baker*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *4.

made part of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract." *Id.*

The *Baker* court also distinguished the holding in *Mitchell* by explaining that the *Mitchell* plaintiffs admitted that they defaulted on their mortgage loan before the defendants initiated the foreclosure proceedings, and, therefore, the plaintiffs could not bring an action for the defendants' subsequent alleged breach. *Id.* The plaintiffs in *Baker*, on the other hand, claimed that they had never defaulted on their loan, and the *Baker* court found a genuine issue of material fact as to whether the plaintiffs had defaulted on their loan and denied the defendant's motion for summary judgment as to the breach of contract claim. *Id.* at *6.

**(2)     Reconciling *Mitchell*, *Baker*, and the parties' arguments.**

The Court reiterates that *Castrillo*, *Gaitan*, *Fouche'*, *Mitchell*, and *Baker* are all decisions from district courts outside of the Fourth Circuit and are non-binding.  All but *Fouche'* are unpublished, and only *Mitchell* and *Baker* have any factual relevance to the case at bar because they involved a contract incorporating conditions of federal regulations as conditions of the contract. *Mitchell* is distinguishable from the case at bar for at least the following reasons:  (1) the court found that the defendant had not violated the relevant regulation, so clearly, to the extent that the conditions of the regulation were conditions of the parties' contract, the defendant was in full compliance with the terms of that contract and (2) the plaintiffs admitted that they breached the contract at issue, thus excusing the defendant from its obligation to perform.  *Baker* is also distinguishable from the case at bar because (1) the plaintiffs did not seek a declaratory judgment, bringing instead a claim for breach of contract and (2) the *Baker* court established grounds for denying the defendant's motion for summary judgment as to the breach of contract claim – that the

plaintiffs had never defaulted on the loan – before it ever had to reach the issue of whether the defendant had violated the federal regulations incorporated into deed of trust.

Nevertheless, the Court is persuaded by the *Baker* court's conclusion that the mortgagee's failure to comply with the regulations made part of the parties' agreement could give rise to liability on a contract theory because the parties incorporated the terms into their contract. The court recognized that this theory was distinct from the plaintiffs' other theory for wrongful foreclosure and acknowledged that because the parties explicitly incorporated the HUD regulations into their agreement, the documents and regulations constituted an integrated contract.

In the case at bar, the parties do not dispute the fact that they entered into a valid contract in the form of the Deed of Trust that incorporated conditions contained in 24 C.F.R. § 203.604 as conditions of the contract. The Deed of Trust, therefore, manifests the parties' "mutual assent to a bargained-for exchange of promises." *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979) (citing Restatement (Second) of Contracts §§ 19-23 (Tentative Draft Nos. 1-7, 1973)). One such bargained-for promise was the Defendant's commitment to comply with the requirements of 24 C.F.R. § 203.604. To that end, the Deed of Trust obligates the Defendant to have, or reasonably attempt to have, a face-to-face meeting with the Plaintiff prior to commencing foreclosure unless the Defendant is excepted from this obligation under 24 C.F.R. § 203.604(c)(2). The Plaintiff seeks a declaratory judgment that the Defendant has not complied with the terms of the Deed of Trust sufficient to allow the Defendant to go forward with a foreclosure of the home. Thus, the Plaintiff's declaratory judgment action relates to rights and obligations under the parties' contract. Such an action is premised on a theory of liability separate and distinct from a simple claim for violation of federal regulations, as would be forbidden under the NHA. Additionally, the

parties do not cite, and the Court is not aware of, any principles of preemption that would operate to suggest that the absence of a federal cause of action under the NHA was intended to prevent parties from entering into an agreement to make otherwise unenforceable conditions enforceable under state principles of contract law.

Of course, a party first guilty of a breach of contract can neither insist on performance by the other party nor maintain an action against the other party if the other party subsequently refuses to perform, as the first material breach relieves the other party of the obligation to perform. 17A Am. Jur. 2d Contracts § 606 (West 2009); *see Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997) ("[A] party who commits the first breach of contract is not entitled to enforce the contract."). However, an exception to this rule exists where the first breach "did not go to the 'root of the contract' but only to a minor part of the consideration." *Horton*, 487 S.E.2d at 203. In other words, the exception exists where the first breach is not a material breach. "A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." *Id.* at 204.

The Plaintiff alleges that she "fell into arrears on the note." Pl.'s Compl. ¶ 8. Neither party has alleged that, in doing so, the Plaintiff committed a "material breach" of the parties' contract such that the Defendant was excused from its obligation to perform under the contract. Indeed, the fact that the contract specifically contemplates the Plaintiff falling into arrears by imposing obligations on the Defendant to do certain things in the event of arrearage prior to commencing foreclosure – such as having a face-to-face meeting with the mortgagor – suggests that simply falling into arrears on the note is not a material breach. Of course, as neither party has asked the Court to decide this issue, the Court will not reach it. Thus, for the purposes of the Defendant's motion to dismiss, the

Plaintiff has alleged grounds sufficient to state a claim for relief in the form of a declaratory judgment if indeed the Plaintiff has alleged facts sufficient to show that the Defendant violated 24 C.F.R. § 203.604. As explained below, the Court finds that the Plaintiff has sufficiently alleged such facts.

**B.     The Plaintiff sufficiently alleged that the Defendant violated the conditions of 24 C.F.R. § 203.604(b) and is not excepted from these conditions by 24 C.F.R. § 203.604(c)(2).**

The Defendant argues that, even if the Plaintiff can bring a declaratory judgment action related to rights and obligations under a contract governed by state law, such an action could not be sustained under the facts pled because the Defendant did not violate the federal regulations incorporated into the contract. The Defendant acknowledges that a face-to-face meeting is contemplated by 24 C.F.R. § 203.604(b), but emphasizes the exception contained in 24 C.F.R. § 203.604(c)(2) that provides that "[a] face-to-face meeting is not required if . . . [t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." 24 C.F.R. § 203.604(c)(2). The Plaintiff has alleged that the defendant maintains "branch offices" within 200 miles of the mortgaged property[4], and that, consequently, the defendant is not excepted by § 203.604(c)(2) from the face-to-face obligation under § 203.604(b).

The Defendant does not dispute the fact that it has *loan origination* branch offices within 200 miles of the Plaintiff. The Defendant believes, though, that the existence of these loan origination

---

[4]The Plaintiff's Complaint technically alleges that "PHH has branch offices within 200 miles of the *mortgagee*." Pl.'s Compl. ¶ 17 (emphasis added). Of course, PHH *is* the mortgagee, and the Court believes that this mistake in wording was nothing more than a typographical error. The Defendant has made no mention of this error, and the Plaintiff uses the terms "mortgagee," "mortgagor," and "mortgaged property" correctly elsewhere in her Complaint and Response. Accordingly, the Court construes the Plaintiff's Complaint as having alleged that "PHH has branch offices within 200 miles of the *mortgaged property*."

offices is irrelevant, arguing that 24 C.F.R. § 203.604 obligates a mortgagee to have, or attempt to have, a face-to-face meeting with the mortgagor only if the mortgaged property is within 200 miles of a *servicing* branch office. The Defendant alleges, and the Plaintiff does not dispute, that the Defendant does not maintain any *servicing* branch offices within 200 miles of the mortgaged property. In advancing its argument, the Defendant cites to the following HUD interpretation of 24 C.F.R. § 203.604 available on HUD's website: "the face-to-face meeting requirement referenced in 24 CFR 203.604 relates only to those mortgagors living within a 200-mile radius of a *servicing* office." U.S. Department of Housing and Urban Development, "General Servicing Frequently Asked Questions," *available at* http://www.hud.gov/offices/hsg/sfh/nsc/faqgnsrv.cfm (last visited Jan. 21, 2010) (emphasis added). The Defendant asserts that this interpretation is deserving of the Court's deference under *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) or *Auer v. Robbins*, 519 U.S. 452 (1997). D.'s Mot. to Dismiss at 4; D.'s Reply at 3. The Plaintiff asserts, relying on *Christensen v. Harris County*, 529 U.S. 576 (2000), that the HUD interpretation is not deserving of any deference. The Court agrees with the Plaintiff that the interpretation is not deserving of deference, but a thorough analysis of the relevant case law, both cited and uncited by the parties, is necessary to arrive at this conclusion and reconcile the parties' arguments.

### (1)    Analysis of the various relevant deference standards.

Where an executive agency administers a congressionally-created program, the agency may promulgate regulations to fill gaps in the statute implicitly or explicitly left to the agency by Congress. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007); 73 C.J.S. *Public Administrative Law & Procedure* § 161 (2009). Often, the administrative agency offers its

16

interpretation of (1) the *statute* it administers and/or (2) the *regulations* it promulgates pursuant to its administration of the statute. An agency can offer interpretations of the *statute* it administers either (1) in the actual formal regulations it promulgates pursuant to its administration of the statute or (2) in less formal opinion letters, policy statements, agency manuals, and the like. An agency's interpretation of its own formal *regulations* presumably will come only in the form of the less formal materials, as the inclusion of language in the regulation itself would be formal defining language of the regulation, not a secondary interpretation of the regulation. Courts afford these various types of agency interpretations different levels of deference.

Deference afforded to an administrative agency's interpretation of the *statute* it administers found *in its formal regulations* is governed by *Chevron*, *supra*, 467 U.S. 327 (1984). Deference afforded to an administrative agency's interpretation of the *statute* it administers found *in opinion letters, policy statements, and like materials* is governed by *Christensen*, *supra*, 529 U.S. 576 (2000). Deference afforded to an administrative agency's interpretation of its own *regulations* is governed cumulatively in the Fourth Circuit by *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), *Auer*, *supra*, 519 U.S. 452 (1997), *Christensen*, *supra*, 529 U.S. 576 (2000), *United States v. Deaton*, 332 F.3d 698 (4th Cir. 2003), and *Humanoids Group v. Rogan*, 375 F.3d 301 (4th Cir. 2004). At issue in the case at bar is HUD's interpretation of its own *regulation*. Accordingly, the *Skidmore-Auer-Christensen-Deaton-Humanoids* pentalogy control.

*Skidmore*, a case that predated *Chevron* by 40 years, involved an administrative agency's setting forth of "interpretative bulletins and informal rulings" that provided a "practical guide to employers and employees" as to how to interpret the *statute* the agency was charged with administering. *Skidmore*, 323 U.S. at 138. The Supreme Court recognized that the interpretations

were not binding on district courts because they were "not reached as a result of hearing adversary proceedings in which [the agency] finds facts from evidence and reaches conclusions of law from findings of fact." *Id.* at 139. Nevertheless, the Court explained that this did not mean that the interpretations "are not entitled to respect." *Id.* at 140. Thus, the Court held that the interpretations "do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* The Court explained that the weight such interpretations are to be given "in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.*

Unlike *Skidmore* and *Chevron*, *Auer*, decided in 1997, involved an administrative agency's interpretation of its own *regulations* that it had promulgated pursuant to its authority under the relevant controlling statute. The interpretation was offered in the form of an *amicus* brief filed at the request of the Supreme Court. Rejecting the petitioners' claim that the interpretation was unworthy of deference, the Court held that the agency's interpretation of its *own regulations* was "controlling unless 'plainly erroneous or inconsistent with the regulation.'" *Auer*, 519 U.S. at 461 (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989) and *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). The Court did not balk, as it had in *Skidmore*, at the fact that the agency's *amicus* brief interpretation had not been the product of formal debate and fact finding, stating instead that "[t]here [wa]s simply no reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter in question." *Id.* at 462.

In *Christensen*, decided three years after *Auer*, Harris County, Texas administrators wrote the United States Department of Labor, the agency charged with administering the Fair Labor Standards Act ("FLSA"), asking for their interpretation of a specific issue under both the FLSA and the Department of Labor's regulations related to the FLSA. *Christensen*, 529 U.S. at 580. In its letter response, the Department of Labor explained that "neither the statute nor the regulations" permitted the conduct that was the subject of the County's question. *Id.* at 581. Thus, in terms relevant to the case at bar, *Christensen* involved an administrative agency's *letter opinion* interpreting both the *statute* it administered and its own *regulations*.

In an *amicus* brief, the United States argued that the Department of Labor's letter opinion interpreting the Fair Labor Standards Act was entitled to deference under *Chevron*, but the Supreme Court explained that *Chevron* "held that a court must give effect to an agency's *regulation* containing a reasonable interpretation of an ambiguous statute." *Id.* at 587 (citing *Chevron*, 467 U.S. at 842-44) (emphasis added). Thus, as the interpretation of the statute at issue was contained in an agency *letter opinion* and not an agency *regulation*, *Chevron* did not apply. The Court noted that the Department of Labor's *letter opinion* was "not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking." *Id.* The Court then held that "[i]nterpretations such as those in opinion letters – like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law – do not warrant *Chevron*-style deference. Instead, interpretations contained in formats such as opinion letters are 'entitled to respect' under our decision in *Skidmore*, but only to the extent that those interpretations have the 'power to persuade.'" *Id.* (internal citations omitted). The Court then held that it found "unpersuasive the agency's interpretation of the *statute* at issue." *Id.* (emphasis added).

Next, and more relevant to the case at bar, the *Christensen* Court turned its attention to the United States' argument that the Department of Labor's letter opinion interpreting its own *regulation* was entitled to deference under *Auer*. The Court acknowledged that it held in *Auer* that "an agency's interpretation of its own regulation is entitled to deference." *Id.* at 588 (citing *Auer*, 519 U.S. at 461). The Court then explained, though, that "*Auer* deference is warranted only when the language of the regulation is *ambiguous*." *Id.*[5] (emphasis added). Finding that the Department of Labor's regulation was "not ambiguous," the Court in *Christensen* held that *Auer* deference was unwarranted.[6] *Id.*

While the Supreme Court in *Christensen* explained clearly that *Auer* deference applies only to an agency's interpretation of its own *ambiguous* regulation, it stopped short of providing a precise analysis of how a court should treat an administrative agency's interpretation of its own *unambiguous* regulation. In *Deaton*, the Fourth Circuit offered just such guidance: "If the regulation is unambiguous, then . . . [*Auer*] deference does not apply, and *the regulation's plain language*, not the agency's interpretation, controls." *United States v. Deaton*, 332 F.3d 698, 709 (4th

---

[5]Interestingly, the Court in *Christensen* does not cite to a specific page in *Auer* for the proposition that *Auer* deference is available only where the regulation at issue is *ambiguous*. Presumably, the *Christensen* Court was guided by the *Auer* Court's statement that a rule governing judicial interpretation of statutes and regulations is "not a limitation on the Secretary [of Labor]'s power to resolve ambiguities in his own regulations." *Auer*, 519 U.S. at 462. Additionally, the Court in *Auer* noted that "[n]o *clear* inference can be drawn" one way or the other under the regulation at issue." *Id.* (emphasis added). There is no definitive language in *Auer* suggesting that the Court limited its holding as applicable only to an administrative agency's interpretation of *ambiguous* regulations.

[6]Only four justices in *Christensen* supported the entire majority position. Two justices concurred in the final judgment, and three justices dissented. Justice Scalia, the author of the *Auer* opinion, wrote a lengthy concurrence in *Christensen* criticizing the majority's analysis of *Auer* deference.

Cir. 2003) (citing *Christensen*, 529 U.S. at 588) (emphasis added). Indeed, "where 'neither the scope nor the effect' of the regulation in question is ambiguous, '[t]here is no call for deference to the agency's legal interpretation.'" *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, 565 F.3d 545, 555 (9th Cir. 2009) (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1034 (9th Cir. 2005)). Otherwise, "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." *Christensen*, 529 U.S. at 588.

Finally, *Humanoids* clarified certain residual *Christensen* issues not addressed by the Fourth Circuit in *Deaton*. In *Humanoids*, the plaintiff, relying on *Christensen*, argued that the relevant administrative agency's interpretation of its own regulation did not merit judicial deference because the agency "did not adopt its interpretation in a formal enough manner." *Humanoids*, 375 F.3d at 306. The Fourth Circuit rejected this argument, recognizing that the portion of *Christensen*'s holding that persuasive *letter* opinion interpretations are only "entitled to respect" under *Skidmore* "addresses only an agency's use of a policy statement, manual, or the like to interpret a *statute*; it does not address the deference afforded when an agency employs these materials to state the agency's interpretation of its own *regulations*." *Humanoids*, 375 F.3d at 306 (citing *Christensen*, 529 U.S. at 587-88) (emphasis in original). The Fourth Circuit then explained that, "[w]hen an agency interprets its own *regulation*, as opposed to a *statute*, *Auer* deference applies." *Id.* (emphasis added). Such deference applies even to *informal* interpretations as long as such interpretations were "adopted upon [the agency's] 'fair and considered judgment.'"[7] *Id.* at 307 (quoting *Auer*, 519 U.S. at 462). Nevertheless, the Fourth Circuit acknowledged that *Christensen* held that "deference under

---

[7]The Fourth Circuit recently explained more thoroughly that less formal interpretations must have "[s]ome indicia of reliability and reasonableness . . . in order for [the court] to defer to [them]." *Shipbuilders Council of America v. U.S. Coast Guard*, 578 F.3d 234, 245 (4th Cir. 2009).

*Auer* is due 'only when the language of the regulation is ambiguous.'" *Id.* (quoting *Christensen*, 529

U.S. at 588). The *Humanoids* court then went on to determine that the regulation at issue was in fact

ambiguous and, therefore, that "the deferential standard set forth in *Auer* govern[ed] [its] review of

the [agency's] interpretation." *Id.* at 307.

### (2) HUD's letter interpretation is not deserving of deference.

Reconciling this case law, the Court will analyze the issue at bar as follows. First, the court

must determine whether the administrative agency is interpreting (1) the *statute* it is charged with

administering or (2) the *regulations* it promulgates in furtherance of its administrative obligations.

If the administrative agency is interpreting a *statute*, the court must then determine if the

interpretation is contained (1) in the agency's formal *regulations* or (2) in less formal opinion letters

and like materials. If the interpretation is contained in a formal regulation, the interpretation

receives a *Chevron* analysis. If the interpretation is contained in a letter opinion or the like, the

interpretation is governed by *Christensen* and receives a *Skidmore* analysis.

If, however, the administrative agency is interpreting a *regulation*, as is at issue in the case

at bar, the court must first determine whether the regulation is *ambiguous*. If indeed the regulation

is *ambiguous*, then *Auer* applies, and the agency's interpretation of that regulation is controlling,

unless it is plainly erroneous or inconsistent with the regulation. *Auer*, 519 U.S. at 461. If the

regulation is *unambiguous*, then the interpretation receives no deference, and the regulation's plain

language controls. *Deaton*, 332 F.3d at 709. The formality of the interpretation is irrelevant for the

purpose of a district court's *Auer/Deaton* analysis. *Humanoids*, 375 F.3d at 307.

### (i)    24 C.F.R. § 203.604(c)(2) is unambiguous.

"The inquiry into whether a regulation is ambiguous depends on whether 'the issue [at hand] is settled by the plain language of the regulation.'" *United States v. Levin*, 496 F. Supp. 2d. 116, 120 (D. D.C. 2007) (quoting *Deaton*, 332 F.3d at 710)).   "The regulation is ambiguous if it can reasonably be interpreted multiple ways giving rise to multiple conclusions." *Id.* (citing *Drummond Coal Co. v. Hodel*, 610 F.Supp. 1489, 1498 (D. D.C. 1985); *Auer*, 519 U.S. at 455-58).   The language of 24 C.F.R. § 203.604(c)(2) reads as follows: "A face-to-face meeting is not required if . . . [t]he mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either." 24 C.F.R. § 203.604(c)(2).  The parties agree that determining whether the regulation is ambiguous turns on the meaning of the term "branch office."  The Plaintiff contends that "[a] 'branch office' according to the plain language of the regulation is not limited to a 'servicing office.'" Pl.'s Response at 3.

The Defendant, on the other hand, argues that "the alleged obviousness of § 203.604 is belied by HUD's inclusion of an interpretation of the term's meaning in its 'Frequently Asked Questions.'" D.'s Reply at 3.  The Defendant also argues that "branch office" should be limited to "servicing office" because the regulation aims to provide homeowners with expert advice regarding options in lieu of foreclosure and, as HUD's interpretation indicates, "[f]or the most part, individuals that staff an origination office are not familiar with servicing issues and are not trained in debt collection or HUD's Loss Mitigation Program."  U.S. Department of Housing and Urban Development, "General Servicing Frequently Asked Questions," *available at* http://www.hud.gov/offices/hsg/sfh/nsc/faqgnsrv.cfm (last visited Jan. 21, 2010).

The Court agrees with the Plaintiff that 24 C.F.R. § 203.604(c)(2) is unambiguous. The word "its" clearly modifies "mortgagee," and the phrase "a branch office of either" clearly refers to both "the mortgagee" and "its servicer." Thus, a face-to-face meeting is not required if the following are not located within 200 miles of the mortgaged property: (1) the mortgagee, (2) the mortgagee's mortgage servicer, (3) a branch office of the mortgagee, or (4) a branch office of the mortgagee's mortgage servicer.

Subpart C of Part 203 of Subchapter B of Chapter II of Subtitle B of Title 24 of the Code of Federal Regulations does not define "branch," "office," or "branch office." In the context relevant to the case at bar, "branch" is defined as a "[d]ivision, office, or other unit of business located at a different location from [the] main office or headquarters." BLACK'S LAW DICTIONARY 170 (5th ed. 1979).[8] "Office" is defined as "[a] place for the regular transaction of business or performance of a particular service." BLACK'S LAW DICTIONARY 977 (5th ed. 1979).[9] Thus, a "branch office," in common parlance, is a place for the regular transaction of business or performance of a particular service located at a different location from the business's main office or headquarters.[10]

---

[8]"Branch" can similarly be defined as "a division of an organization," or "a separate but dependant part of a central organization," such as "the neighborhood branch of the city library." MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY 175 (9th ed. 1985).

[9]"Office" can similarly be defined as "a place where a particular kind of business is transacted or a service is supplied," such as (1) "a place in which the functions (as consulting, record keeping, clerical work) of a public officer are performed," (2) "the directing headquarters of an enterprise or organization," or (3) "the place in which a professional person (as a physician or lawyer) conducts his or her professional business." MERRIAM-WEBSTER'S NEW COLLEGIATE DICTIONARY 820 (9th ed. 1985).

[10]The Court is not aware of a reputable dictionary that defines precisely the two-word term "branch office." The Court notes, though, that *Black's* does provide a sub-definition for a "'[b]ranch office' of a bank or savings bank" under its definition of "branch bank," defining such a "branch office" as "an office, unit, station, facility, terminal, space or receptacle at a fixed location other than a principal office, however designated, at which any business that may be conducted in a principal

24

Therefore, there is simply no reason to believe from the plain language of the regulation that a "branch office" is anything more, or less, than a secondary place of business located apart from the principal or main office of that business. Thus, as it relates to the language of 24 C.F.R. § 203.604(c)(2), the term "the mortgagee" refers to the mortgagee's principal or main office that is clearly separate and distinct and located apart from a "branch office of the mortgagee." A "branch office of the mortgagee," therefore, is simply any office – other than the mortgagee's main office – where regular business is transacted or a particular service is performed. A "branch office" need not transact regular business *and* perform a particular service. Similarly, a "branch office" is not restricted to performing only one, particular, specialized service to be considered a "branch office," as the performance of *any* particular service qualifies the business location as a "branch office." Therefore, any location, other than the Defendant's principal office, where the Defendant transacts regular business or performs a particular service is a "branch office." Accordingly, a "loan origination" office, even if it does not "transact regular business" or perform the particular service of *servicing* a loan, at the very least performs *a* particular service – that of *originating* the loan. There is nothing at all ambiguous about the term "branch office," and, in reading the regulation, nothing at all suggests that "branch office" actually means "servicing branch office."

In fact, the very interpretation on which the Defendant relies explains that a "branch office" *does* include *both* loan origination branch offices *and* loan servicing branch offices: "[HUD] is aware that many Mortgagees maintain 'branch offices' that deal only with loan origination and some of these offices may only be staffed part-time." U.S. Department of Housing and Urban Development, "General Servicing Frequently Asked Questions," *available at*

_____

office of a bank or savings bank may be transacted." BLACK'S LAW DICTIONARY 170 (5th ed. 1979).

http://www.hud.gov/offices/hsg/sfh/nsc/faqgnsrv.cfm (last visited Jan. 21, 2010). Thus, HUD, the agency that created 24 C.F.R. § 203.604(c)(2), clearly considers the plain language of the term "branch office" to include those offices of the mortgagee "that deal only with loan origination." *Id.*

For these reasons, the Court finds that neither the scope nor the effect of the regulation in question is ambiguous. The regulation cannot reasonably be interpreted multiple ways giving rise to multiple conclusions, as the only reasonable interpretation of 24 C.F.R. § 203.604 obligates a mortgagee to have, or attempt to have, a face-to-face meeting with the mortgagor if the mortgaged property is within 200 miles of *any* branch office. Deferring to HUD's interpretation would be to permit the agency to create de facto a new regulation that completely rewrites § 203.604(c)(2). Accordingly, HUD's interpretation is not deserving of *Auer* deference, and the plain language of the regulation will control.

> **(ii)** **The plain language of § 203.604(c)(2) does not restrict the meaning of "branch office" to include only "servicing branch offices."**

For the reasons stated above in section IV-B(2)(i), the plain language of 24 C.F.R. § 203.604(c)(2) does not restrict the term "branch office" to include only "servicing branch offices." Instead, the plain language indicates unambiguously that the mortgagee must have, or attempt to have, a face-to-face meeting with the mortgagor prior to commencing foreclosure proceedings if the mortgagee has *any* branch office, including a loan origination branch office, within 200 miles of the mortgaged property.

> **(iii)** **Neither parties' cited authority is persuasive.**

The parties recognize only two decisions from state or federal courts across the country as ever having addressed the issue presented in the case at bar. The Plaintiff cites the decision in

26

*Washington Mut. Bank v. Mahaffey*, 796 N.E.2d 39 (Ohio Ct. App. 2003), in which the Ohio Appeals Court concluded that the existence of a *loan origination* branch office – not just a *servicing* branch office – located within 200 miles of the mortgaged property prevented 24 C.F.R. § 203.604(c)(2) from excepting the bank from its face-to-face meeting obligation. The Defendant cites the decision in *Mitchell*, *supra*, No. 3:06-CV-2099-K, 2008 WL 623395, in which the court granted summary judgment in favor of the defendant mortgage company that had failed to conduct, or attempt to conduct, a face-to-face meeting with the plaintiff because the only branch offices within 200 miles of the mortgaged property were not *servicing* branch offices.

The Court is aware of only two other cases involving the § 203.604(c)(2) branch office exception issue: *Greene v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, Civ. A. No. 89-2614, 1991 WL 200132 (E.D. Pa. Sept. 26, 1991) and *Mellon Mortgage Co. v. Larios*, No. 97-C-2330, 1998 WL 292387 (N.D. Ill. May 20, 1998). In *Greene*, the court stated that, "[u]nder 24 CFR 203.604(b), [the mortgagee] would have had to provide an opportunity for a [face-to-face] conference if it had *an office or servicer* within 200 miles of plaintiff's property." *Greene*, Civ. A. No. 89-2614, 1991 WL 200132, at *5 (emphasis added). The court refused summary judgment by giving the plaintiff mortgagor "the benefit of the doubt," as the plaintiff mortgagor had claimed that the defendant mortgagee had a servicing branch office within 200 miles of the mortgaged property. *Id.* In *Larios*, the plaintiff mortgagee claimed that it was excused from § 203.604(b)'s face-to-face meeting requirement "because its nearest branch office [wa]s more than 200 miles away from the mortgaged property." *Id.* The defendant mortgagors claimed that the plaintiff mortgagee was not excused from the meeting requirement because it had an address in a telephone listing that was located within 200 miles of the mortgaged property. *Id.* The court found "no basis" for striking the defendants'

affirmative defense because the "defendants ha[d] posited a set of facts that support[ed] their allegation that [the mortgagee] was required to have a face-to-face meeting with them." *Id.*

Thus, of the four jurisdictions known to the Court to have addressed the § 203.604(c)(2) branch office exception issue, only one – *Mitchell*, which, as previously discussed, is easily distinguishable from the case at bar – has sided with HUD's interpretation. None of the four decisions is binding on the Court, and the Court does not find any of the opinions persuasive, as they all failed to perform any deference analysis. To that end, further discussion of the opinions and their value to the Court in deciding the instant case is unnecessary.[11]

## V. CONCLUSION

While the Plaintiff does not have a private federal cause of action under the National Housing Act, she may bring a declaratory judgment action related to rights and obligations under the parties' contract that is otherwise governed by state law even though the rights and obligations of the contract include conditions set forth in federal regulations. The Plaintiff has alleged that the Defendant has "branch offices" within 200 miles of the mortgaged property at issue, and even if, as the Defendant alleges, these branch offices are *loan origination* branch offices and not *servicing* branch offices, the plain language of the unambiguous regulation dictates that the Defendant would still be obligated to have, or reasonably attempt to have, a face-to-face meeting with the Plaintiff before it could commence foreclosure. Thus, the Plaintiff's Complaint is sufficient under Rules 8(a)(2) and 12(b)(6) of the Federal Rules of Civil Procedure to state a claim for relief that is

---

[11]The Court will also refrain from commenting on the persuasiveness of HUD's interpretation of 24 C.F.R. § 203.604, as the Court cannot even reach this issue as it might under a *Skidmore*-type analysis because *Deaton* clearly explained that the regulation's plain language controls regardless of the persuasiveness of the interpretation when an agency interprets its own unambiguous regulation.

plausible on its face.  For the foregoing reasons, the Court will deny the defendant's motion to

dismiss.  An appropriate Order shall issue.


January 21, 2010                          _____/s/_____
DATE                            RICHARD L. WILLIAMS
                                SENIOR UNITED STATES DISTRICT JUDGE